518 December 11, 2014 No. 71

IN THE SUPREME COURT OF THE
STATE OF OREGON

Amber KENNEDY,
*Petitioner on Review,*
*v.*
Kelsey C. WHEELER,
*Respondent on Review,*
*and*
Katie HALL,
*Defendant.*

(CC CV080512; CA A149019; SC S061836)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 16, 2014.

Mark McDougal, Kafoury & McDougal, Portland, argued the cause and filed briefs for the petitioner on review.

Michael T. Stone, Brisbee & Stockton, LLC, Hillsboro, argued the cause and filed the briefs for respondent on review.

Kathryn H. Clarke, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

_____
  * Appeal from Yamhill County Circuit Court, Carroll J. Tichenor, Judge. 258 Or App 343, 309 P3d 196 (2013).

**WALTERS, J.**

Oregon law requires that "[i]n civil cases three-fourths of the jury may render a verdict." Article VII (Amended), section 5(7), of the Oregon Constitution; ORCP 59 G(2). In this negligence case, defendant admitted liability, and a jury of twelve was asked to decide the issues of causation and damages. The jury completed a special verdict form and unanimously agreed that defendant had caused damage to plaintiff. At least three-fourths of the jurors (*i.e.*, nine of twelve) also agreed to award plaintiff specific amounts of economic and noneconomic damages. However, the same nine jurors did not agree on the amounts of economic and noneconomic damages awarded. The trial court accepted the verdict and entered judgment for plaintiff, but the Court of Appeals reversed. *Kennedy v. Wheeler*, 258 Or App 343, 309 P3d 196 (2013). For the reasons that follow, we conclude that the jury's verdict met the requirements of Oregon law. We reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

The facts relevant to the issue before us are procedural and uncontested. Defendant drove through a stop sign and collided with a car in which plaintiff was a passenger.[1] Plaintiff filed a negligence action, which was tried to a jury of twelve. The trial court instructed the jury that defendant had "admitted liability so that the only issue to be decided by you *** is the amount of the damages to be awarded to the plaintiff." The court defined both economic and non-economic damages for the jury and then instructed it that, "[i]f you find that the plaintiff is entitled to recover economic damages, you must award some noneconomic damages." The court told the jury that it should answer the questions on the verdict form "according to the directions on the form and all the instructions of the court." The court explained that "[a]t least the same nine jurors must agree on each answer unless the verdict form instructs you otherwise as to a particular question."

---

[1] Plaintiff obtained judgment against two defendants, Wheeler and Hall. Defendant Wheeler appealed; defendant Hall did not. Thus, when we refer to defendant, we refer only to defendant Wheeler.

As completed by the jury, the verdict form provided as follows:

"For questions 1 and 2, at least the same nine jurors must agree on each of the questions that you answer.

"We, the jury, find:

"1.  Was defendant Wheeler's negligence a cause of damage to plaintiff?

"ANSWER:    12 (Yes) or No)

"If your answer to question 1 is 'yes,' proceed to question 2.

"If your answer to question 1 is 'no,' proceed to question 3.

"2.    What are plaintiff's damages resulting from defendant Wheeler's negligence?

"ANSWER:   Economic Damages $65,386.48

Noneconomic Damages $300,000."

The court clarified that the number "12" in response to Question 1 indicated that all twelve jurors had agreed on that response. The court then read the verdict form to the parties and asked the presiding juror whether at least nine jurors had answered Question 2; she answered, "yes, sir." Defendant asked that the jury be polled. When the court asked each juror whether the vote of $65,386 in economic damages was "your vote," ten jurors said "yes." Jurors one and three said "no." When the court asked whether the vote of $300,000 was "your vote," nine jurors said "yes"; jurors two, three, and twelve said "no."

The court indicated that it would accept the verdict and thanked the jurors for their service. Defendant then asked the court to wait, stating, "I don't think there's nine agreeing, if I counted right." The court stated that it counted ten jurors agreeing on economic damages and nine agreeing on noneconomic damages. The following colloquy then ensued:

"Defendant:  I think there were only the same eight, however.

"Court:   Pardon?

"Defendant:   I think there was [*sic*] only eight that were in agreement.

"Court:   No, there was [*sic*] nine out of the twelve that voted for the unanimous verdict."

The trial court then discharged the jury. After the jury was discharged, defendant took exception for the record. At that point, defendant explained more fully:

"Defendant:   So there are on—looking for nine common people on economic and noneconomic, I add that up as only being eight people who agree.

"Court:   I agree with you that there were only eight that answered yes to the same—for the economic and noneconomic damages that answered the same way, and if your theory is that the same nine had to vote on both, then that will have to go up for the appeal because I don't read the statute that—

"Defendant:   That's my objection, so—

"Court:   Okay. Anyway, I've accepted the verdict."

Defendant then filed a written objection to entry of judgment and a motion for new trial, arguing that the verdict was invalid under Article VII (Amended), section 5(7), of the Oregon Constitution and ORCP 59 G(2), both of which provide that "[i]n civil cases three-fourths of the jury may render a verdict." After a hearing, the trial court denied the motion based on two independent "findings." First, the court found that defendant had failed to make a timely objection to the jury's verdict. Second, the court found that the jurors' vote on causation was unanimous, that at least nine of those twelve jurors had agreed on the measure of economic damages awarded, and that at least nine of those twelve jurors had agreed on the measure of noneconomic damages awarded. The court concluded that the law did not require the same nine jurors to agree on the amounts of economic and noneconomic damages awarded and that the jurors' concurrence on causation and damages was therefore sufficient. The court then entered a general judgment providing that trial of the case had resulted in a verdict for plaintiff against defendant. The judgment included a monetary award for the total of the economic and noneconomic damages that the jury had awarded—$365,386.

Defendant appealed, assigning error to the court's receipt of the verdict and entry of judgment.[2] Defendant argued, as she had below, that the verdict was unconstitutional and violated ORCP 59 G(2), that the verdict was therefore invalid, and that the judgment based on that verdict must be reversed.

In her answering brief, plaintiff asserted both procedural and substantive arguments. She contended that defendant had failed to object to the verdict with sufficient clarity before the jury was dismissed and that the issue was therefore unpreserved. She also argued that Oregon law does not require that the same nine jurors agree on economic and noneconomic damages. Defendant argued that the court could and should reach the merits of the substantive issue that the case presented.

The Court of Appeals rejected plaintiff's preservation argument, but focused on a different procedural issue—the "law of the case" doctrine—that the court concluded resolved the case in defendant's favor. The court reasoned as follows:

> "Here, the court instructed the jury that at least the same nine jurors were required to agree on each answer on the verdict form. As we have explained, that required at least the same nine jurors to agree on the amounts of both types of damages. When the court instructed the jury, apparently without objection, that at least the same nine jurors were required to agree on the amounts of both types of damages, that instruction became the law of the case. [*Congdon v. Berg*, 256 Or App 73, 80-81, 299 P3d 588 (2013)]; *see also Fulton Ins. v. White Motor Corp.*, 261 Or 206, 223 n 5, 493 P2d 138 (1972) (when neither party objected to jury instruction, it became the law of the case); *Mays v. Vejo*, 224 Or App 426, 430-31, 198 P3d 943 (2008) (same).

> "Thus, we conclude that, in this case, at least the same nine jurors were required to agree on each answer in the verdict form, including the amounts of economic and

---

[2] Defendant also assigned error to the court's failure to sustain defendant's objection to the verdict, the court's denial of defendant's objection to entry of judgment, and the court's denial of defendant's motion for new trial. Defendant's arguments in support of those assignments of error are duplicative.

noneconomic damages. It is undisputed that only the same eight jurors agreed on economic and noneconomic damages. As a result, the verdict violated Article VII (Amended), section 5(7), of the Oregon Constitution, and the court erred in entering a general judgment based on that verdict."

258 Or App at 349-50.

On review in this court, defendant characterizes the Court of Appeals decision as a decision on subconstitutional grounds and adopts its "law of the case" analysis.[3] We begin with that procedural issue and then take up the substantive question whether Oregon law requires that the same nine jurors agree on the specific sums of economic and noneconomic damages awarded.

## I.  LAW OF THE CASE

This court has described the "law of the case" doctrine as precluding relitigation of an appellate court holding after remand and on subsequent appeal:

"It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review."

*State v. Pratt*, 316 Or 561, 569, 853 P2d 827 (1993) (quoting *Simmons v. Wash. F. N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)). The policies underlying that doctrine "essentially parallel those served by the doctrines of *stare decisis* and *res judicata* * * *, *i.e.*, consistency of judicial decision, putting an end to litigation of matters once determined, and preserving the court's prestige." *Koch v. So. Pac. Transp. Co.*, 274 Or 499, 511-12, 547 P2d 589 (1976) (citing Allan D.

---

[3] In that regard, the Court of Appeals decision in this case is somewhat ambiguous. After concluding that the jury instructions established the "law of the case," the court went on to conclude that the verdict violated the Oregon Constitution. 258 Or App at 350. Although the court may not, therefore, have decided the case on subconstitutional grounds, the court's failure to analyze the meaning of the constitutional provision at issue makes the basis for its decision somewhat unclear.

Vestal, *Law of the Case: Single-Suit Preclusion*, 1967 Utah L Rev 1 (1967)).

In the law review article cited in *Koch*, the author explains that "law of the case" is a concept that may arise in a number of different contexts "in which a ruling or decision has been made in a case and the same legal problem arises a second time in the same case." Vestal, 1967 Utah L Rev at 4. In this case, defendant argues that that concept applies not only to preclude relitigation of an appellate court decision on remand but also to preclude reexamination of a trial court decision on a direct appeal. More specifically, in the context of this case, defendant argues that, when instructing the jury, the trial court essentially ruled that the same nine jurors must agree on the sums of economic and noneconomic damages awarded; accordingly, therefore, the trial court was required to adhere to that legal determination when the jury returned a verdict that was inconsistent with that ruling. Defendant also contends that the trial court's decision precludes plaintiff from arguing for a different interpretation of Oregon law on appeal and ties this court's interpretive hands as well. For the reasons that follow, we hold that the "law of the case" doctrine does not apply in these circumstances.

First, we are not persuaded that the trial court actually made a decision that the same nine jurors must agree on the amounts of economic and noneconomic damages awarded. The trial court instructed that the same nine jurors must "agree on each answer" on the verdict form. That form contained two questions. Question 1 asked whether defendant's negligence was a cause of damage to plaintiff. Question 2 asked the amount of plaintiff's damages and provided blank spaces for the jury to fill in the amounts of economic and noneconomic damages. Read together, one interpretation of the jury instructions and the verdict form was that they required only that nine of the twelve jurors who answered "yes" to Question 1 also agree on and fill in the blanks in Question 2. Another interpretation, however—that adopted by the Court of Appeals and argued here by defendant—is that the instructions and verdict form required that at least the same nine jurors who agreed to the sum specified for economic damages (if any)

also agree to the sum specified for noneconomic damages (if any). We conclude that that second interpretation is not supported by the record.

In particular, after the court polled the jury, defendant told the court that "I don't think there's nine agreeing, if I counted right," and that "there were only the same eight." The court responded that "there was [*sic*] nine out of the twelve that voted for the unanimous verdict" and discharged the jury. Thus, it appears that, when the court instructed the jury and received its verdict, it understood its instructions to have the first of the two potential meanings that we have posited—*i.e.*, that nine of the twelve who voted yes in response to Question 1 must also agree to Question 2. It was only when defendant later stated her exception for the record that the trial court understood defendant's theory to be that the same nine jurors had to agree on both types of damages. But even then, the court did not understand defendant to argue that that requirement arose from the court's instructions. The court told defendant that if that was her theory, she would have to raise it on appeal, because the court did not understand the "statute" to require such concurrence. Defendant responded that that was her objection. She did not tell the court that, regardless of what a statute, the constitution, or the rules of civil procedure required, the court's instructions required the same nine jurors to concur on both types of damages. From that record, we cannot conclude that, when the trial court instructed the jury, it made a deliberate ruling or decision that the same nine jurors must agree on the specific amount of economic and noneconomic damages awarded.

Furthermore, even if the trial court had made an initial determination that the same nine jurors must agree on economic and noneconomic damages, the trial court was not precluded from reconsidering that decision after the jury's deliberations had begun. A trial court may revise its instructions to clarify them or to address more specifically an issue that it previously had addressed more generally. *See State ex rel Harmon v. Blanding*, 292 Or 752, 756, 644 P2d 1082 (1982) ("[A] court is not barred from changing a ruling which it believes to be erroneous if neither party has been prejudiced beyond simply ending up on the losing side

of the ruling."). Had defendant advised the trial court of her interpretation of its instructions or had the trial court understood that its instructions were subject to more than one interpretation, the trial court would not have been bound by its prior instructions. It could have revised them and instructed the jury accordingly.[4]

Because the trial court's instructions in this case were susceptible to more than one interpretation and defendant did not inform the court of her interpretation or give the court or plaintiff an opportunity to consider whether reinstruction was necessary or appropriate, those instructions do not constitute a ruling of the trial court that establishes the "law of the case."

Just as importantly, the "law of the case" doctrine does not make a trial court's ruling binding on an appellate court. *Thompson v. Coughlin*, 329 Or 630, 635 n 5, 997 P2d 191 (2000). In *Thompson*, the court observed that, although a ruling from the Court of Appeals operated as "law of the case" as to the trial court and the Court of Appeals, it did not bind the Supreme Court, which never had addressed the issue. *See* Vestal, 1967 Utah L Rev at 20 ("After all, appellate courts exist to correct the errors made by inferior courts, so that it would seem to be illogical to say that a court can make a legal decision which is not subject to review.").

That is not to say, of course, that every trial court ruling is subject to appellate review. Defendant is correct that, when a party fails to object to a jury instruction, that party is foreclosed from appealing on the ground that the instruction was erroneous. Rules of appellate procedure preclude parties from raising issues on appeal that they

---

[4] In fact, had the trial court recognized the jury verdict as inconsistent with its instructions, and thus, perhaps, invalid, it may have been required to reinstruct the jury and to send it out for further deliberations. ORCP 59 G(3) (if fewer jurors than number required for verdict answer in the affirmative, jury shall be sent out for further deliberations); ORCP 59 G(4) (if verdict is insufficient, it may be corrected by jury under advice of court, or court may require jury to deliberate further); *see also Lewis v. Devils Lake Rock Crushing Co.*, 274 Or 293, 301-02, 545 P2d 1374 (1976) (when jury returned verdict awarding punitive but not general damages, trial court was authorized to reinstruct jury and require further deliberations); *Flansberg v. Paulson*, 239 Or 610, 612, 399 P2d 356 (1965) (when jury assessed special damages but not general damages, trial court correctly rejected verdict and reinstructed jury).

did not raise in the trial court. ORAP 5.45 (error will not be considered on appeal unless claim was preserved in the lower court); *see also State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000) ("Generally, an issue not preserved in the trial court will not be considered on appeal."); *State ex rel Sam's Texaco & Towing v. Gallagher*, 314 Or 652, 663, 842 P2d 383 (1992) (if party fails to object to jury instructions before jury retires, objection is waived). That preservation rule is not applicable here because plaintiff did not appeal from the trial court judgment or assign error to the jury instructions that the trial court gave. Rather, it was defendant who appealed from the trial court judgment. Consequently, defendant has not relied and does not rely on ORAP 5.45 or other preservation rules as a shield against an appeal by plaintiff. Instead, defendant seeks to use the trial court's jury instructions as a sword to keep plaintiff from responding to defendant's arguments about the reach of Oregon law and thereby limit this court's analysis of that issue.

          To support her argument, defendant cites several cases in which this court has used the term "law of the case" in explaining its decisions. However, in those cases, the court did not use the term "law of the case" for the purpose that defendant urges. Rather, the court used the term to describe a party's obligation to preserve an issue for review, a jury's obligation to follow the instructions of the court, or the court's authority to presume that the jury has done so. For instance, in *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 493 P2d 138 (1972), *superseded on other grounds by Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 8 P3d 200 (2000), the issue before the court was whether the trial court had erred in instructing the jury, over the defendant's objection, that an administrative rule required drivers to stop and remedy defective conditions in their vehicles. This court agreed with the defendant that the trial court had erred in giving the instruction, because there was no evidence in that case that permitted the jury to find that the defendant knew or could have known that his truck had developed a dangerous condition. Nevertheless, the court held that the error was harmless. The trial court also had instructed the jury that compliance with the administrative rule was excused "if the violation was caused by circumstances beyond the

operator's control and if compliance was impossible." *Id.* at 223. This court presumed that the jury had followed that instruction and reasoned that, if the jury had found that the defendant had violated the administrative rule, the jury also must have found the violation to be excused: Under the undisputed evidence, compliance with the rule was impossible. *Id.* at 224.

In a footnote commenting on the wording of the excuse instruction, the court used the term "law of the case." The court stated:

> "This formulation of the rule was disapproved in *Ainsworth v. Deutschman*, 251 Or 596, 600, 446 P2d 187 (1968), where we said the following statement is preferable: '*** a violation of a statute requiring adequate safety equipment is excusable if the defect could not have been discovered by the exercise of the highest degree of care.' However, neither party complained of the trial court's instruction, and it become the *law of the case.*"

*Id.* at 223 n 5 (emphasis added). The court's purpose in dropping that footnote was to alert the bench and bar that, in *Ainsworth*, the court had disapproved the excuse instruction that the trial court had used in *Fulton* and that a different formulation was preferable. However, the court explained, its decision in *Ainsworth* did not affect the result that it reached in *Fulton.* In *Fulton*, the parties had not objected to the wording of the excuse instruction. Therefore, in conducting its harmless error analysis, this court could presume that the jury had followed the excuse instruction as given.

In *Tou Velle v. Farm Bureau Co-op. Exchange*, 112 Or 476, 229 P 83 (1924), this court also used the term "law of the case" to describe the effect of jury instructions on jury deliberations. In that contract case, the trial court had instructed the jury that if it found for the plaintiff, the plaintiff's damages were $786.28 and the jury must fill in that amount of damages on the verdict form. After the jury had retired and deliberated, it sent out the following question:

> "Would it be possible for the jury to make a compromise in the matter of damages, or must we find the total amount $786.28 named in the complaint for the plaintiff, or else

nothing. Think a verdict could be reached on compromise, but not otherwise."

*Id.* at 478. The court answered: "Reach such verdict as you think is right." *Id.*

The jury then returned a verdict for one-half of the amount of the uncontested damages. The defendant contended that the compromise verdict was invalid and not supported by the evidence. The plaintiff responded that the party against whom damages are awarded cannot contest their insufficiency. This court began its discussion by observing:

> "It is well settled that the instructions given by the court to the jury, without objections or exceptions thereto, become *the law of the case*, and it is consequently the legal duty of a jury to comply with such instructions, and if they fail to do so the court may set aside the verdict. *** Accordingly it is the general rule that where the court instructs the jury as to a specific amount of a party's liability, if he is found to be liable at all, and the jury disregards the instructions and brings in a verdict for a different amount, it is the duty of the court to set aside the verdict and grant a new trial."

*Id.* at 480 (emphasis added); *accord Columbia Co. v. Ross Island Co.*, 145 Or 96, 108-109, 25 P2d 911 (1933).

The court could have reached the results that it did in *Fulton* and *Tou Velle* had it omitted reference to the "law of the case" and relied on established preservation principles to decide that a party may not obtain review of an instruction to which the party has not objected, *Sam's Texaco*, 314 Or at 663, or that an appellate court must presume that the jury followed the trial court's instructions, *Purdy v. Deere and Company*, 355 Or 204, 227, 324 P3d 455 (2014) (so stating).[5]

---

[5] Correctly understood, *Wampler v. Sherwood*, 281 Or 261, 574 P2d 319 (1978), another case on which defendant relies, is in accord. In *Wampler*, the question was whether the trial court had erred in granting a directed verdict for defendant because there was insufficient evidence to support plaintiff's allegation that a boundary had been established by "acquiescence" or "practical location." With the agreement of the parties, the trial court had defined those terms for the jury. On appeal, the parties argued that the court should impose a different standard from that which the parties had agreed at trial was appropriate. This court stated that

> "[a]lthough appellants in their brief on this appeal also cite other cases and authorities and would state these requirements in a somewhat different manner, we believe that the rule as stated in this instruction, to which both

The term "law of the case" is best reserved for use in the context in which a party seeks to relitigate an appellate decision. *See* Vestal, 1967 Utah L Rev at 21 (discussing application of "law of the case" to preservation issues and concluding that such usage "in reality stands apart from the other situations" in which "law of the case" applies). Use of the term to address other issues may confuse rather than clarify.

In this case, we agree with the Court of Appeals that defendant preserved the issue of the meaning of the provision that "[i]n civil cases three-fourths of the jury may render a verdict."[6] The "law of the case" doctrine does not limit plaintiff's argument or this court's analysis of that issue. Accordingly, we proceed to the substantive question presented.

## II.   JUROR CONCURRENCE

Article VII (Amended), section 5(7), and ORCP 59 G(2) both provide: "In civil cases three-fourths of the jury may render a verdict." Although the text of those provisions is identical, defendant is correct that our analysis must begin by looking to the meaning of the rule. *State ex rel Engweiler v. Felton*, 350 Or 592, 617, 260 P3d 448 (2011) (court's practice is to address rule before turning to statute or constitution). Thus, the initial question that we address is the intent of the Council on Court Procedures (Council) when it adopted ORCP 59 G(2). *State v. Vanornum*, 354 Or 614, 620, 317 P3d 889 (2013); *A. G. v. Guitron*, 351 Or 465, 479, 268 P3d 589 (2011); *Waddill*, 330 Or at 382 n 2. After undertaking that analysis, we then assess whether the Oregon Constitution imposes additional or more stringent concurrence requirements.

---

parties agreed, became binding upon both of them as the *'law of the case.'* Upon examination of the record, we also believe that there was evidence in this case from which the jury could have properly found that the requirements of the rule as stated in that instruction were satisfied."

*Id*. at 267 (emphasis added). We understand *Wampler* as resting on preservation principles and deciding that the trial court did not err in evaluating the sufficiency of the evidence under the standard the parties had agreed at trial.

[6] Further discussion of the preservation issue would not be of benefit to the bench or bar.

To discern the intent of the Council, "we use an analytical process that parallels the one we use to interpret statutes—that is, we examine text, context, and, if helpful, legislative history." *Vanornum*, 354 Or at 620. The text of ORCP 59 G(2) instructs that a jury's verdict need not be unanimous, but may be supported by a vote of three-fourths of its members. Thus, for a jury of twelve, at least nine jurors must vote in favor of the jury's verdict. When a verdict includes more than one finding, however, ORCP 59 G(2) is less explicit. It could mean that at least nine jurors must vote in favor of each of the jury's findings, or it could mean that the same nine jurors must vote in favor of all or some subset of those findings. As applied to the facts of this case, the parties agree that ORCP 59 G(2) requires that at least nine jurors agree on the answers to each of the questions posed by the court, including the amounts of economic and noneconomic damages awarded. The parties disagree, however, about whether that rule requires that the *same* nine jurors agree on the amounts of those two types of damages. In considering which of those potential meanings the Council intended, we turn to the rule's context, including its enactment history. *Vanornum*, 354 Or at 620 (so stating).

In 1978, the Council promulgated the Oregon Rules of Civil Procedure, including ORCP 59 G(2).[7] In adopting ORCP 59 G(2), the Council incorporated verbatim the wording of a 1953 statute—*former* ORS 17.355(1) (1977), *repealed by* Or Laws 1979 ch 284, § 199. At the time that the 1953 statute was enacted, the Oregon Constitution also permitted, as it does now, three-fourths of a jury to render a verdict.[8]

ORCP 59 G(2) does not define the term "verdict," but ORCP 61 addresses the issue, defining both "general" and "special" verdicts.[9] ORCP 61 A pertains to general verdicts and provides:

---

[7] ORCP 59 G(2) has remained unchanged since that time. The Council and the legislature have amended other sections of ORCP 59, but ORCP 59 G(2) has not been amended.

[8] Article VII (Amended), section 5(7), was added to the constitution by initiative petition in 1910. Or Laws 1911, p 8, § 5. *See Ex parte Jack Wessens*, 89 Or 587, 589, 175 P 73 (1918) (so stating).

[9] ORCP 61 has remained unchanged since the Council promulgated it in 1978.

"(1)   A general verdict is that by which the jury pronounces generally upon all or any of the issues either in favor of the plaintiff or defendant.

"(2)   When a general verdict is found in favor of a party asserting a claim for the recovery of money, the jury shall also assess the amount of recovery. A specific designation by a jury that no amount of recovery shall be had complies with this subsection."

ORCP 61 B permits a court to require a jury to return only a "special verdict in the form of a special written finding upon each issue of fact," and provides that if the court omits an issue of fact raised by the pleadings or the evidence, the court may make a finding.[10]

The Council derived the text of ORCP 61 from several sources. In ORCP 61 A(1), defining the term "general verdict," the Council used wording identical to that used in *former* ORS 17.405 (1977), *repealed by* Or Laws 1979, ch 284, § 199, a statute that dated to the Deady Code.[11] Similarly, in the first sentence of ORCP 61 A(2), requiring that the jury assess the amount of recovery, the Council incorporated the substance of *former* ORS 17.425 (1977), *repealed by* Or Laws 1979 ch 284, § 199, also adapted from the Deady Code.[12] In the second sentence of ORCP 61 A(2), providing that a jury may assess the amount of recovery by designating no amount of recovery, the Council reversed this court's decision to the contrary in *Fischer v. Howard*, 201 Or 426, 458, 271 P2d 1059 (1954). *See* Fredric R. Merrill, *Oregon Rules of Civil Procedure: 1984 Handbook* 140 (1984)

---

[10] ORCP 61 B provides, in part:

"The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. *** The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires such party demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

[11] General Laws of Oregon, Civ Code, ch II, title IV, § 210*a*, p 191 (Deady 1845-1864).

[12] General Laws of Oregon, Civ Code, ch II, title IV, § 211, p 191 (Deady 1845-1864).

("The last sentence of 61 A(2) allows a jury properly to return a verdict in favor of a plaintiff asserting a right to recover damages in the amount of 'zero' damages. *See Fischer v. Howard*[.]"). Finally, in ORCP 61 B the Council provided more detailed treatment of special verdicts. Before the adoption of ORCP 61 B, *former* ORS 17.405 provided: "A special verdict is that by which the jury finds the facts only, leaving the judgment to the court."

From that context, it appears that the parties are correct that a fundamental requirement of ORCP 59 G(2) is that at least three-fourths of the jury must vote in favor of each of the jury's written findings that form a basis for the trial court's judgment. Oregon law has long used the word "verdict" to describe both a jury's pronouncement in favor of one party or the other and its assessment of recovery (a general verdict) and a jury's written findings (a special verdict). Thus, when a jury's verdict includes an assessment of a monetary recovery under ORCP 61 A(2), at least nine jurors out of twelve must agree on that assessment. Although a jury may be entitled to award zero dollars in damages under ORCP 61 A(2), at least three-fourths of the jurors must vote for that result.

In this case, that fundamental requirement was satisfied. The jury's verdict was a special verdict. The jury did not make a pronouncement in favor of plaintiff; it made factual findings. At least nine jurors voted in favor of each of those findings, including the assessment of economic and noneconomic damages, and the court entered a judgment based on those findings. The judgment provided that the trial had "resulted in a verdict for the plaintiff" against defendant. The judgment also included, in a section labeled "Money award," a judgment for the total of the economic and noneconomic damages assessed by the jury. Thus, at least three-fourths of the jury voted in favor of each of the written findings included in the jury's special verdict that formed a basis for the trial court's judgment.

That does not, however, resolve the question on which the parties disagree. Defendant argues that ORCP 59 G(2) imposes additional concurrence requirements and urges us to consider our prior decisions construing Article VII (Amended), section 5(7), as further context for our interpretation of the rule. Because the texts of the two provisions

are identical, we agree that such analysis is appropriate. *See State v. Shaw*, 338 Or 586, 600, 113 P3d 898 (2005) (discussing prior interpretations of earlier versions of a provision); *Mastriano v. Board of Parole*, 342 Or 684, 693, 159 P3d 1151 (2007) ("[W]e generally presume that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing on those statutes.").

We begin with *Clark v. Strain*, 212 Or 357, 319 P2d 940 (1958). In *Clark*, the jury rendered a general verdict "in favor of the plaintiff and against the defendant in the sum of [$10,000]." *Id*. at 360. Polling of the jurors revealed that only eight jurors had agreed both that defendant was liable and that plaintiff had incurred damages of $10,000. A ninth juror had agreed that defendant was liable, but had disagreed on the amount of damages awarded. The trial court announced that the verdict was 8 to 4 and therefore invalid. The jurors then corrected the court, explaining that nine jurors had voted in favor of liability and nine also had voted in favor of the damages awarded. However, one of the nine who had voted for the award of damages had voted *against* liability. Despite the fact that that juror's decision was logically inconsistent—in that a plaintiff is entitled to damages only if a defendant is liable—the trial court accepted the verdict.

On review, the court noted that the jury had rendered a general verdict and cited *former* ORS 17.405 for its understanding that a general verdict is a "pronouncement on all issues." *Id*. at 364. The court reasoned that such a verdict must be "a document reflecting the integration of the minds of the jurors to such an extent that it, in fact, constitutes a legal verdict" and that the trial court's discussion with the jurors demonstrated that the jurors' verdict did not meet that standard. *Id*. To comport with Article VII (Amended), section 5(7), the court opined, the same legally required number of jurors must agree on the issues necessary to support a judgment for the plaintiff—in that case, liability and damages. *Id*. at 359, 364. The court therefore reversed the trial court's judgment.

In reaching that conclusion, the court discussed a California case, *Earl v. Times-Mirror Co.*, 185 Cal 165, 196 P 57 (1921), in which the same nine jurors had not agreed

on the amounts of compensatory and punitive damages awarded.[13] In *Clark*, the court distinguished *Earl* on the basis that the jury's decisions on the amounts of the two types of damages were "independent." *Id*. at 365.[14]

The court later applied *Clark* in considering the validity of a jury's special verdict and, in doing so, clarified the reasoning on which *Clark* rested. In *Munger v. S.I.A.C.*, 243 Or 419, 414 P2d 328 (1966), the plaintiff had received a final permanent partial disability award to compensate him for a 35 percent loss of use of one arm as a result of a 1961 injury. The plaintiff later claimed that he was entitled to an additional award for an aggravation of that injury. The workers' compensation board denied the plaintiff's claim, and, on the plaintiff's appeal, the first question to the jury was whether the plaintiff had suffered an aggravation. Nine jurors answered "yes" to that question. A subsequent question asked the extent of the loss of use that the plaintiff suffered as a result of the 1961 injury. Nine jurors answered that the plaintiff had suffered a 70 percent loss of use. However, two of those nine jurors were among the jurors who had answered that the plaintiff had suffered no aggravation at all. The trial court refused to receive the verdict and this court affirmed. This court reasoned that the decision of the two jurors that the plaintiff had not suffered an aggravation was inconsistent with their finding that the plaintiff's loss of use was greater than the 35 percent established in 1961, *id*. at 422, and that, "[i]f the findings are inconsistent, a verdict based on them is invalid." *Id*. at 426. The court cited *Clark* and explained that "[t]he reasons for requiring a general verdict to be consistent are equally valid as to special verdicts in which answers to more than one question are necessary to establish liability." *Id*. at 425. The court concluded that

---

[13]  As we will discuss, California's constitution also permits three-fourths of a jury to render a verdict. *See* Cal Const, art I, § 16 ("[I]n a civil cause three-fourths of the jury may render a verdict.").

[14]  This court's decision in *Estate of Michelle Schwarz v. Philip Morris Inc.*, 348 Or 442, 235 P3d 668 (2010), is consistent with that reasoning. There, the court distinguished *Clark* and held that the fact that one jury had decided defendant's liability and damages did not preclude retrial of the issue of punitive damages by a different jury. *Id*. at 460 n 6. Therefore, the determination of whether to award punitive damages was independent from the determination of liability and damages.

> "[a]n integrated verdict of the type presented here—one in which the answer to a question is dependent on the answer to a previous question and both are necessary to the determination of the final verdict—does not differ in principle from a general verdict."

*Id*. at 423-24.

We assume that when the Council adopted ORCP 59 G(2), it was aware of the court's decisions in *Clark* and *Munger* and intended that its rule be consistent with the court's interpretation of the identically worded constitutional provision.[15] Therefore, we understand ORCP 59 G(2) to require that, when a jury of twelve renders a special verdict and makes written findings in response to questions posed by the court, (1) at least nine jurors must agree on the answers that form a basis for the trial court's judgment; and (2) the votes of the jurors on those questions must be consistent. That is, the jurors' answers to questions necessary to a judgment may not demonstrate a logical inconsistency.[16]

---

[15] Although defendant agrees with that proposition, she interprets *Clark* and *Munger* more broadly than we do and cites three additional cases for her argument that Article VII, section 5(7), requires that same nine jurors agree on "all issues determined by the verdict": *Freeman v. Wentworth & Irwin*, 139 Or 1, 15-16, 7 P2d 796 (1932); *Schultz v. Monterey*, 232 Or 421, 424, 375 P2d 829 (1962); and *Sandford v. Chev. Div. Gen. Motors*, 292 Or 590, 613, 642 P2d 624 (1982). Defendant's argument is not convincing. In *Freeman*, only eight jurors voted in favor of the damages awarded and the court held that nine out of twelve jurors are required to agree on damages as well as on liability. In *Schultz*, the court confronted the same logical inconsistency that was apparent in *Clark*: at least one juror who voted against liability also voted in favor of awarding damages. In *Sanford*, the court held that the defendant was entitled to have the jurors polled on their answers to each of the questions they had been asked. The court did not consider the nature of those questions or whether concurrence on the answers to those questions would be constitutionally required. Neither those three cases, nor *Clark* or *Munger*, stand for the broader proposition that defendant urges.

[16] Plaintiff may disagree with that conclusion. She argues that a party has a right to have all of the empanelled jurors decide each issue presented and that Oregon law should not be applied to deprive a party of that right, arguing that a verdict in which nine jurors agreed, for example, on liability and a different nine jurors agreed on the amount of damages is permissible under Article VII (Amended), section 5(7). *See Fritz v. Wright*, 589 Pa 219, 237-39, 907 A2d 1038 (2006) (holding that Pennsylvania Constitution did not require a "same-juror" rule); *Resch v. Volkswagen of America, Inc.*, 36 Cal 3d 676, 682, 685 P2d 1178 (1984) ("[A] juror who dissented from a special verdict finding negligence should not be disqualified from fully participating in the jury's further deliberations."). We need not consider that argument given the result that we reach in this case.

Before we apply ORCP 59 G(2) to the facts of this case, however, we must consider whether Article VII (Amended), section 5(7), imposes additional or more stringent concurrence requirements than does that rule. Although the court construed that constitutional provision in *Clark* and *Munger*, it did not fully analyze it under the rubric of *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). In *Priest*, we explained that in evaluating the meaning of a constitutional provision, we begin with the "specific wording" of the provision, then discuss the "case law surrounding it," and finally consider the "historical circumstances" of its adoption.

As we observed in discussing the identical text of ORCP 59G(2), the text of Article VII (Amended), section 5(7), does not explicitly impose a concurrence requirement other than by declaring that a "verdict" may be reached by the agreement of three-fourths of a jury. And, as we also explained in discussing ORCP 59 G(2), the statutes that were in existence in 1910 when the voters approved Article VII (Amended), section 5(7), used the term "verdict" to mean a jury's written findings necessary to the court's judgment. Therefore, the constitutional framers likely intended to impose a fundamental requirement that at least three-fourths of the jury must vote in favor of each such finding.

Whether the framers intended to impose additional concurrence requirements is not obvious from the text of that provision. However, the voters' pamphlet submitted with the measure is instructive. The proponents of the measure stated that "[t]he purpose of this amendment is *** to prevent mistrials and hung juries, by allowing three-fourths of a jury to render a verdict in civil cases." Official Voters' Pamphlet, General Election, Nov 8, 1910, 176-77. The proponents further noted that "[m]any states now allow a majority of the jury in civil cases to render a verdict" and that in such states "[u]sually three-fourths of the jury is required to render a verdict." *Id*. at 177. The proponents did not specify which states had adopted such provisions, but our research indicates that fourteen state constitutions permitted civil verdicts by non-unanimous juries in 1910.[17] We

---

[17] *See* Ark Const, art 2, § 7; Cal Const, art I, § 16; Idaho Const, art I, § 7; Ky Const, § 248; Minn Const of 1857, art I, § 4 (five-sixths); Miss Const, art 3, § 31;

have not discovered an appellate decision in any of those states that would have been available to the drafters of the Oregon provision in 1910 and that interpreted such provisions to require that the same jurors decide all issues necessary to the verdict. From the available history, it therefore is probable that the voters intended only to increase the efficiency of the court system by permitting jurors to render non-unanimous verdicts, not to impose complex concurrence requirements.

When this court later decided *Clark* and *Munger* and interpreted Article VII, section 5(7), to require that the jurors' findings be consistent, it based those decisions on the need to have a jury's verdict function as a coherent whole. On further reflection and with greater attention to the historical circumstances existing at the time that that provision was adopted, we are not persuaded that it imposes more stringent concurrence requirements than those delineated in *Clark* and *Munger* and intended by the Council when it adopted ORCP 59 G(2).

The final step in our analysis is to apply ORCP 59 G(2) as we have construed it to the facts of this case. Defendant argues that, even if ORCP 59 G(2) does not require that the same nine of twelve jurors agree on all written determinations that a jury makes, it does require such concurrence as to the awards of economic and noneconomic damages because "economic damages are not recoverable in the absence of an award of noneconomic damages except in very limited circumstances which are not present in this case." In support of that contention, defendant cites *Wheeler v. Huston*, 288 Or 467, 605 P2d 1339 (1980).

Defendant is incorrect in her understanding of *Wheeler*. *Wheeler* does not make an award of economic damages dependent on an award of noneconomic damages. Rather, *Wheeler* addresses the problem posed by verdicts in which jurors who disagree about a defendant's liability arrive at an improper compromise and award only "special"

---

Mo Const of 1875, § 22(a) (1900); Mont Const of 1889, art II, § 23; Nev Const, art I, § 3; Okla Const, art 2, § 19; SD Const, art VI, § 6; Tex Const, art V, § 13; Utah Const, art I, § 10; Wash Const, art 1, § 21.

damages.[18] In *Wheeler*, the court explained that awards of only "special" damages had been deemed improper because they suggested that the jury had "stubbornly adhered to what was apparently a compromise verdict between some who found liability and others who found none." *Id.* at 471 (quoting *Hall v. Cornett*, 193 Or 634, 240 P2d 231 (1952)). The court noted the difficulty of determining whether a jury had reached such an improper compromise, but decided not to abandon the effort. Instead, the court restated and adhered to the following rule:

> "If there is a question whether *any* general damages were sustained, the jury may conclude that the plaintiff suffered no general damages but did reasonably incur wage loss and/or medical expense. Such verdicts are valid and include cases in which (a) the plaintiff's evidence of injury is subjective, (b) there is evidence that the plaintiff's injuries for which general damages are claimed were not caused by the accident, and (c) the objective evidence of a substantial injury sustained by plaintiff is controverted by other competent evidence, or could be disbelieved by the trier of fact."

*Id.* at 479 (emphasis in original).

Here, plaintiff reiterates the criticism leveled at the rule discussed in *Wheeler* and argues that, because damages are no longer defined as "special" or "general," but instead are defined as "economic" and "noneconomic,"[19] *Wheeler* does not represent current law and should be disavowed. However, even if *Wheeler* is still good law, the improper compromise

---

[18] In *Hoskins v. Scott*, 52 Or 271, 278, 96 P 1112 (1908), this court defined "general" and "special" damages:

> "Damages are either general or special. General, when they are such as the law implies or presumes to have accrued from the wrong complained of. Special, when they are such as really took place and are not implied by law, and are superadded to general damages arising from an act injurious in itself. *** The former, being the direct and immediate result of the act complained of, and necessarily arising out of it, can be recovered under the general allegation of damages, without stating their particular nature, or how they arose, because the law implies or presumes such damages to follow the breach of the contract or the act or wrong complained of."

(Internal citations omitted).

[19] *See* ORS 31.710 (defining economic and noneconomic damages). That statute was enacted in 1987 and renumbered in 2003. *See* Or Laws 1987, ch 774, § 6 (enacting statute as *former* ORS 18.560).

that it prohibits is neither evident in this case nor a basis for imposing the juror concurrence requirement that defendant urges.

In this case, defendant admitted liability and all twelve jurors determined that defendant's negligence was a cause of some damage to plaintiff. The remaining issue for the jury's determination was the specific amounts of the economic and noneconomic damages plaintiff had suffered. We know, therefore, that the concern addressed in *Wheeler*— that jurors might have agreed to special or economic damages in spite of a decision that defendant was not liable—is not presented.

Further, we presume that each juror who voted to award plaintiff economic damages also decided that plaintiff was entitled to at least some amount of noneconomic damages. The trial court instructed the jury that "[i]f you find that the plaintiff is entitled to recover economic damages, you must award some noneconomic damages," and we must presume that the jurors followed that instruction in answering the first question on the special jury verdict form. *See Purdy*, 355 Or at 227 (requiring court to presume that jury followed trial court's instructions). Thus, we further presume that the jurors who disagreed with the noneconomic damages awarded disagreed only about the particular amount and not the fact of those damages. The jury verdict in this case does not demonstrate a compromise verdict in violation of the rule discussed in *Wheeler*.

Moreover, ORCP 59 G(2) addresses a different concern than that which was the subject of the court's decision in *Wheeler*. As we have explained, in a case in which a jury enters a special verdict, ORCP 59 G(2) requires that three-fourths of the jury agree on each of its written findings and that those findings be logically consistent. Under *Clark*, when the same nine out of twelve jurors do not agree on liability and damages their findings do not meet that standard. The same logical inconsistency is not apparent, however, when the same nine out of twelve jurors do not agree on the specific amounts of economic and noneconomic damages awarded. The law does not require a jury to award any specific amount of economic or noneconomic damages

as a prerequisite to entry of a valid judgment for a plaintiff. ORCP 61 A(2). And logic does not require a connection between the amount of economic damages and the amount of noneconomic damages awarded.[20]

In this case, at least nine jurors agreed on the sums of economic and noneconomic damages awarded and their verdict does not demonstrate a logical inconsistency similar to those that rendered the verdicts in *Clark* and *Munger* invalid. The jury's verdict did not violate ORCP 59 G(2) or the Oregon Constitution and the trial court was correct to accept it.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[20] Of course, awards of economic and noneconomic damages may be factually related, in that a greater award of general damages often results in a greater award of noneconomic damages. However, the legal question is one of logical inconsistency, and, at least in this case, the specific amounts of economic and noneconomic damages awarded do not reveal logical inconsistency.