Argued and submitted January 11, affirmed June 22, petition for review denied
October 6, 2016 (360 Or 422)

# INTERNATIONAL LONGSHORE AND WAREHOUSE UNION, LOCALS 8 & 40,
*Petitioner,*

*v.*

# PORT OF PORTLAND,
*Respondent.*

Employment Relations Board
UP01914; A157850

379 P3d 1167

Kevin Keaney argued the cause and filed the briefs for petitioner.

Randolph C. Foster argued the cause for respondent. With him on the brief was Stoel Rives LLP.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

This labor case arises from the contentious relationship between the various parties involved in the operations of the Terminal 6 marine port owned by respondent, the Port of Portland (the Port). Petitioner, International Longshore and Warehouse Union (ILWU), Locals 8 & 40, filed a complaint with the Employment Relations Board (ERB) alleging that the Port had committed certain unfair labor practices under the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782. ERB dismissed the complaint without a hearing, reasoning that, because petitioner's members were not employees of the Port, but, rather, were employees of the Port's private contractor, it had no jurisdiction to hear the complaint. Moreover, ERB concluded that petitioner neither pleaded nor asserted that it represented employees of the Port, which ERB concluded was a requirement for it to have jurisdiction over the complaint. ERB adhered to its decision on reconsideration.

Petitioner seeks review of ERB's order dismissing the complaint and ERB's reconsideration order. Petitioner assigns error to ERB's determination that its members are not employed by the Port, and contends that ERB should have let the case proceed to a hearing. We conclude that, under our standard of review, the board did not err. Petitioner, who acknowledged that its members are employees of a private contractor, never alleged or argued below that its workers are instead—or also—employees of the Port. Accordingly, we affirm.

We begin with our standard of review. "[W]e review for whether ERB has correctly identified the applicable legal principles; we further review for substantial evidence and for substantial reason." *Portland Assn. Teachers v. Mult. Sch. Dist. 1*, 171 Or App 616, 626-27, 16 P3d 1189 (2000); *see* ORS 183.482(8) (providing for judicial review of agency orders in contested cases and defining the scope of that review). We draw the following facts and procedural history from ERB's orders and the record. Because the resolution of this case depends on the nature of the contractual relationship between petitioner and the Port, as well as precisely

what petitioner alleged to ERB, we relate those facts in some detail.

Terminal 6 of the Port of Portland is a large marine port terminal located on the Columbia River that handles containerized cargo. Between 1974 and 1993, the Port employed longshore workers represented by petitioner at Terminal 6. That employment relationship was governed by collective bargaining agreements negotiated between petitioner and the Port, the last of which was signed in 1984 (the 1984 agreement). The 1984 agreement stated that, under its terms, it would extend "in yearly increments * * * unless either party notifies the other, in writing, * * * of its desire to modify the Agreement."

In 1993, the Port transferred management of the stevedoring operations of Terminal 6 to a private contractor. In 1994, the Port sent petitioner a letter stating that it was terminating the 1984 agreement and that the Port "currently does not employ, nor does the Port intend to employ, following expiration of [the 1984 agreement,] * * * members of any of the three ILWU local unions for the operation of any of its Marine terminal facilities." Approximately two months later, the Port "officially rescinded" that notice of cancellation "in order to promote its relationship with the ILWU," but reiterated that it did "not currently nor does it intend in the foreseeable future to [employ] members of the three ILWU locals," and, therefore, "the Port is not an employer of longshore labor and as a result, the [1984 agreement has] no effect." Longshore labor at Terminal 6 continued to be privately managed from 1994 onward.

In 2010, the Port entered into an agreement to lease Terminal 6 to ICTSI Oregon, Inc. (ICTSI), a private corporation, for 25 years. Under that agreement, ICTSI assumed container operations at Terminal 6, but the Port reserved for itself the repair and maintenance of six "Hammerhead" cranes located there. ICTSI began operations in 2011 and employs petitioner's members for the operation of Terminal 6. That employment is subject to a separate collective bargaining agreement negotiated between ILWU and the Pacific Maritime Association, a multiemployer bargaining agency that represents terminal operators and shippers

in the West Coast container shipping industry, including ICTSI. The Port is not a member of the Pacific Maritime Association.

Prior to ICTSI assuming operation of Terminal 6, the Port solicited public bids from contractors for the repair and maintenance of the Hammerhead cranes. ICTSI was the successful bidder and entered into a separate contract with the Port to perform that work. ICTSI has employed petitioner's members to work on the Hammerhead cranes under that maintenance contract. Additionally, in 2012, the Port hired a separate contractor for the maintenance and repair work on one of the Hammerhead cranes, and that contractor did not employ petitioner's members for that work.

Following that 2012 maintenance work, petitioner raised a series of grievances with the Port, alleging that the use of non-ILWU labor violated provisions of the 1984 agreement. The Port refused to address or arbitrate those grievances, asserting that the 1984 agreement was no longer effective because the Port did not employ any of petitioner's members and the 1984 agreement had been "replaced and superseded" by petitioner's collective bargaining agreement with the Pacific Maritime Association, which includes the private contractor ICTSI. Petitioner later sent the Port "official notice" of its intention to negotiate and modify the terms of the 1984 agreement. The Port refused to enter into contract negotiations on the ground that it did not employ petitioner's members. After unsuccessful attempts to arbitrate the dispute, petitioner filed the unfair labor practice complaint underlying this appeal.

In its complaint, petitioner alleged that the Port committed unfair labor practices under two provisions of PECBA. First, petitioner alleged that, by refusing to negotiate a successor agreement to the 1984 agreement, the Port violated ORS 243.672(1)(e), under which it is an unfair labor practice for a public employer to "[r]efuse to bargain collectively in good faith with the exclusive representative" of its bargaining employees. Second, it alleged that, by refusing to arbitrate the dispute, the Port violated ORS 243.672(1)(g), under which it is an unfair labor practice for a public employer to "[v]iolate the provisions of any written contract

with respect to employment relations including an agreement to arbitrate." Petitioner included with the complaint a brief set of factual allegations stating, as relevant here, that the 1984 agreement continued to be in effect but the Port refused to renegotiate its terms, that the Port "controls the maintenance and repair" of the cranes at Terminal 6, and that petitioner's members perform that maintenance and repair work. Petitioner did not allege that its members were employed by the Port.

In response, the Port argued that the complaint should be dismissed because ERB has jurisdiction only to decide disputes "between 'a public employer and the representative of [the public employer's] employees,'" and that it was "undisputed that [petitioner] is not the representative of any current Port employee." (Quoting ORS 243.650(4);[1] first set of brackets in original.) The Port asserted that petitioner's members were employees only of ICTSI. In support of its response, the Port attached various documents, including a transcript excerpt from related federal litigation before the United States District Court for the District of Oregon in which petitioner *agreed* that the Port did not employ petitioner's Local 8 members.[2] In that excerpt, counsel for petitioner admitted that "there is no collective bargaining agreement between the Port and [ILWU] Local 8"; that the 1984 agreement was "an old, expired collective bargaining agreement"; and that, because the Port did not employ ILWU members, there could be no collective bargaining relationship.

The Port also attached a decision from the National Labor Relations Board (NLRB) in another related dispute

---

[1] ORS 243.650(4) sets out the definition of collective bargaining under PECBA, stating, in part, that "'[c]ollective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employees to meet at reasonable times and confer in good faith with respect to employment relations for the purpose of negotiations concerning mandatory subjects of bargaining." As explained below, ERB has construed that statute as limiting ERB's jurisdiction to hear unlawful labor practice complaints to only those between a public employer and that public employer's employees. 279 Or App at 152-53. Though petitioner challenged that interpretation below, it does not raise that issue on appeal and, accordingly, we do not reach it.

[2] *See Hooks v. International Longshore and Warehouse Union, Local 8,* 72 F Supp 3d 1168 (D Or 2014); *International Longshore and Warehouse Union v. ICTSI Oregon, Inc.,* 932 F Supp 2d 1181 (D Or 2013).

that found that "the Port has not employed workers under [the 1984 agreement] for more than two decades," and that "there is no basis on which to conclude that [the 1984 agreement] remains viable for any purpose." *Int'l Longshore & Warehouse Union, AFL-CIO*, 363 NLRB No 12 (slip op at 24), 2015 WL 5638153, at *2 (NLRB Sept 24, 2015).[3]

The administrative law judge (ALJ) assigned by ERB to investigate petitioner's complaint in this case issued petitioner an order to show cause why the case should proceed to a hearing. In that order, the ALJ stated that she was prepared to dismiss the complaint for multiple reasons, including that it appeared that petitioner's members were not employees of the Port, which would leave ERB with no jurisdiction over the complaint. In response, petitioner did not assert that its members were employed by the Port. Instead, petitioner argued that the ALJ was mistaken that PECBA required that petitioner's members be Port employees for ERB to have jurisdiction. Petitioner also asserted that the 1984 agreement continued to be effective and provided a sufficient basis for the complaint to proceed.

The ALJ then emailed both parties a short set of questions. Petitioner's responses to three of those questions are relevant here. First, the ALJ asked, "Are there members of ILWU Locals 8 and 40 [who] are employed by ICTSI and who work at the Port of Portland, Terminal 6?" Petitioner replied, "Yes." Second, the ALJ asked, "Are there members of ILWU Locals 8 and 40 [who] are employed by the Port of Portland and work at the Port of Portland, Terminal 6?" Petitioner replied, "Not currently in a direct sense. The Port does direct the work through ICTSI and has directed work through another contractor." In her fifth question, the ALJ asked, "Does ICTSI or the Port of Portland have responsibility for crane maintenance under the lease agreement between ICTSI and the Port of Portland?" Petitioner replied, in relevant part:

---

[3] In that related proceeding, an administrative law judge considered, among other issues, whether certain work at Terminal 6 should have been assigned to ILWU members or members of a different union—arguments that, in part, turned on the content and disputed effectiveness of the 1984 agreement. *See Int'l Longshore & Warehouse Union, AFL-CIO*, 363 NLRB No 12, 2015 WL 5638153 (NLRB Sept 24, 2015) (adopting the administrative law judge's factual findings and legal conclusions that were made part of the record in the present case).

"This question requires some background. There is an agreement providing that ICTSI perform crane mechanical maintenance. The Hammerhead cranes at [Terminal 6] are Port-owned. The Port is responsible for and assigns the work with regard to maintenance and repair of the cranes. Local 8 crane mechanics actually do the work with regard to mechanical maintenance and repair. The local 8 crane mechanics did the work before ICTSI arrived in Portland and continue to do the same work today. If this case goes to hearing, we expect to be able to establish that Port personnel direct the maintenance and repair of the Hammerhead cranes."

ERB then dismissed the complaint based on a lack of jurisdiction. In doing so, it made two underlying determinations. First, and central to this dispute, ERB found that "[t]he Port, although a public employer, does not employ members of ILWU." In a footnote to that sentence, ERB explained that,

"[w]hen the ALJ asked whether members of ILWU were employed by the Port, ILWU responded, 'Not currently in a direct sense. The Port does direct the work through ICTSI and has directed the work through another contractor.' We understand this to mean that the Port does not employ members of ILWU."

Second, ERB found that, rather than being employed by the Port, "the involved ILWU members are employed by [ICTSI], which is a private, not public, employer." ERB then reasoned that, because petitioner was "unable to plead that the *public employer* (or designated representative) of the affected employees acted unlawfully," as required for an unfair labor practice complaint under PECBA, ERB had no jurisdiction. (Emphasis in original.) ERB added that its "determination that we lack jurisdiction is supported by the NLRB's involvement in related matters with the Port, ICTSI and ILWU."

Petitioner sought reconsideration of ERB's order. Petitioner did not contest ERB's determination that its members were not employed by the Port, but argued instead that that requirement "is a gloss on the statutes that [ERB] has inserted at the urging of [the Port]," and that it was "an improper gloss." On reconsideration, ERB adhered to its prior order, explaining that, because PECBA defines collective

bargaining as "the 'performance of the mutual obligation of a public employer and the representative of *its employees*' to meet and engage in good faith negotiations regarding mandatory subjects of bargaining," for the Port "to be required to collectively bargain with ILWU, the involved ILWU members must be Port employees." (Emphasis in ERB's reconsideration order; quoting ORS 243.650(4).)

On review, petitioner does not challenge the basis of ERB's jurisdictional determination—that is, petitioner does not challenge ERB's legal conclusion that petitioner must represent workers employed by the Port for ERB to have jurisdiction over its complaint. Rather, petitioner challenges ERB's conclusion that petitioner's members are not employed by the Port. Specifically, petitioner argues that its allegations and arguments below contested that issue, requiring ERB to have held a hearing to determine whether the Port employs petitioner's members.

Under PECBA, when an unfair labor practice complaint is filed, ERB is required to "[i]nvestigate the complaint to determine if a hearing on the unfair labor practice charge is warranted. If the investigation reveals that no issue of fact or law exists, [ERB] may dismiss the complaint[.]" ORS 243.676(1)(b); *OSEA v. Salem-Keizer School Dist. 24J*, 103 Or App 221, 225-26, 797 P2d 375 (1990) (ERB did not err in dismissing without a hearing a complaint arising from school district's denial of union's records request related to an employee's grievance; ERB's prehearing investigation found that the records requested were not relevant to the grievance). However, "if [ERB] finds in its investigation * * * that an issue of fact or law exists," then it is required to "set the matter for hearing." ORS 243.676(1)(c).

Here, ERB concluded that it did not have jurisdiction over the complaint because, based on its investigation, petitioner's members were not employed by the Port. ERB explained that conclusion by noting that, when asked directly whether its members were employed by the Port, petitioner replied, "Not currently in a direct sense. The Port does direct the work through ICTSI and has directed work through another contractor." ERB additionally explained that its determination "is supported by the

NLRB's involvement in related matters" between the parties. As noted, petitioner contends that it contested "the 'employer' issue," and, accordingly, ERB erred by dismissing the complaint. Petitioner argues that it "consistently maintained that the Port's control, direction, and assignment of work amounts to 'employment' of ILWU members" for the purposes of PECBA. Specifically, petitioner points to the following allegations as having been sufficient to raise the issue: (1) that the Port "controls" and is "responsible for and assigns" the maintenance and repair work to the Hammerhead cranes; (2) that petitioner's members perform that work; and (3) that petitioner would be able to show at a hearing that Port personnel direct that repair work.

However, based on this record, and under our standard of review, we conclude that ERB did not err. ERB found that it was uncontested that petitioner's members were employees of ICTSI, and not the Port. That finding was supported by substantial evidence in the record, and substantial reason. As noted, petitioner did not allege in its complaint, nor assert to the ALJ or ERB, that its members were employees of the Port. Rather, petitioner asserted in its complaint, and again in its reply to the ALJ's questions, that its members were *employees of ICTSI*. The undisputed evidence in the record is that ICTSI employed petitioner's members for its operation of Terminal 6 pursuant to a collective bargaining agreement, and that petitioner's workers performed the work on the Port's cranes as employees of ICTSI, which contracted with the Port to perform that work.

The ALJ advised petitioner in the order to show cause that she was prepared to dismiss the complaint on the ground that petitioner did not represent any Port employees. Rather than take that opportunity to argue then, as it does now, that the Port should be considered an employer of petitioner's members, petitioner argued instead that no such employment requirement exists under PECBA, and asserted that the 1984 agreement was sufficient grounds for jurisdiction. In that context, ERB did not err in interpreting petitioner's statement that its members were "[n]ot currently in a direct sense" employees of the Port to mean that petitioner's members were not employed by the Port.

Petitioner nevertheless argues that ERB erred because it applied an overly narrow construction of the term "employ." Before us, petitioner argues that, under various definitions of the term "employ," the Port's control, direction, and assignment of the crane maintenance work amounts to "employment" of petitioner's members who did that work. Additionally, petitioner notes that ERB applies the "right to control" test when considering whether a worker is a private contractor or an employee. Under that test, ERB focuses on "the relationship between the individual and the business entity," and analyzes the following principal factors: "(1) evidence of the right to, or the exercise of, control; (2) method of payment; (3) provision of equipment; and (4) the right to fire." *Portland Planning and Engineering Emp. Assn. v. City of Portland*, Case No. UC-58-95, 16 PECBR 879, 886 (1996), *aff'd*, 148 Or App 635, 939 P2d 678 (1997) (citing *McQuiggin v. Burr*, 119 Or App 202, 207, 850 P2d 385 (1993)). Relying on those concepts, petitioner contends that ERB erred in concluding, without a hearing, that the Port does not employ petitioner's members, and that petitioner had failed to contest that issue.

As we explained above, although petitioner did assert that the Port assigned, directed, and controlled the maintenance work on its cranes, petitioner never argued that the Port's assignment, direction, or control of that work *amounted to* the Port's employment of petitioner's members— let alone that it amounted to employment under the right to control test, some other legal theory, or any of the definitions petitioner now urges upon this court. Rather, in light of the record as a whole, petitioner's allegations were all consistent with the employment relationship that both parties agreed existed: petitioner's members were employees of ICTSI, a private contractor hired by the Port to perform work on its cranes. That the Port would control, direct, and assign the maintenance and repair work that ICTSI performed is consistent with that contracting relationship.[4] Without more,

---

[4] Petitioner also never alleged below that the Port exerted any control over *the workers* who performed the crane maintenance, or the manner in which they performed that work. *See SAIF v. DCBS*, 250 Or App 360, 364, 284 P3d 487 (2012) ("The 'right to control' test examines whether the employer has a right to control the individual's performance.").

and in light of petitioner's concession that its members were actually employees of ICTSI, ERB did not err in concluding that petitioner failed to create an issue of fact or law that its members were employees of the Port.

In sum, we conclude that ERB did not err in dismissing petitioner's complaint without a hearing. Substantial evidence and substantial reason supported ERB's determination that petitioner failed to create an issue of fact or law that its members were employed by the Port. *See* ORS 243.676(1)(b) (stating that ERB may dismiss a complaint if its "investigation reveals that no issue of fact or law exists").

Affirmed.