Argued and submitted March 1, reversed and remanded June 22, petition for review denied October 6, 2016 (360 Or 422)

INTERNATIONAL LONGSHORE
AND WAREHOUSE UNION, LOCAL 8,
*Petitioner,*

*v.*

PORT OF PORTLAND,
*Respondent.*

Employment Relations Board
UP03714; A158937

379 P3d 1172

Kevin Keaney argued the cause and filed the briefs for petitioner.

Randolph C. Foster argued the cause for respondent. With him on the brief were John B. Dudrey and Stoel Rives LLP.

Before Tookey, Presiding Judge, and DeHoog, Judge, and Shorr, Judge.

**SHORR, J.**

This is the second in a pair of cases in which petitioner, the International Longshore and Warehouse Union (ILWU), Local 8, seeks review of the Employment Relations Board's (ERB) dismissal of its Public Employee Collective Bargaining Act (PECBA) complaints against the Port of Portland for lack of jurisdiction. ERB concluded that there was no jurisdiction based on the lack of an employment relationship between the Port and petitioner's members. Petitioner argues on review that ERB erred in dismissing its complaint without a hearing, contending, among other things, that ERB's application of the "law of the case" doctrine constituted reversible error. As explained below, we conclude that ERB erred in applying the law of the case doctrine in order to reach the dispositive determination that the Port does not employ petitioner's members. We therefore reverse and remand for ERB to reevaluate whether its investigation of the complaint in this case, without reliance on the law of the case doctrine, revealed a disputed issue of fact or law that would warrant a hearing.[1]

## THE BACKGROUND OF *ILWU I*

We reiterate and supplement the extensive factual background contained in *ILWU, Locals 8 & 40 v. Port of Portland*, 279 Or App 146, 379 P3d 1167 (2016) (*ILWU I*), only as necessary. In short, since 1993, the Port has engaged private contractors to run various Port operations, including the maintenance and repair of its cranes. Over the years, those private contractors have generally, or perhaps even exclusively, employed petitioner's members. *ILWU I* stems from the Port's 2012 hiring of a crane maintenance contractor who did not employ petitioner's members. Petitioner subsequently sought to "bargain decision and impact" with respect to that decision. The Port refused, asserting that it did not employ petitioner's members and therefore had no obligation to bargain with petitioner over that or any other issue.

---

[1] Petitioner also argues that ERB erred in determining that it was "undisputed" that the Port did not employ petitioner's members, and, in particular, that it erred in determining that petitioner did not timely assert the existence of an employment relationship between the Port and its members. Our disposition obviates the need to consider that argument.

Petitioner subsequently filed an unfair labor practices complaint with ERB. *Id.* at 147-49. Although the complaint was predicated upon the Port's purported violations of PECBA, petitioner did not allege that its members were employed by the Port. Further, as described in detail in *ILWU I*, petitioner had multiple opportunities during ERB's investigation to advance and develop arguments pertaining to the nature of any employment relationship between the Port and its members. *Id.* at 149-52. Notwithstanding those opportunities, petitioner did not contest evidence that its members were employed by a private contractor and that it had a collective bargaining relationship with the representative of that private contractor, and avoided directly responding to the Port's assertions and the administrative law judge's (ALJ) inquiries about the exact nature of its members' purported employment relationship with the Port.

Thus, given petitioner's failure to allege an employment relationship between its members and the Port and the lack of evidence of any pertinent employment relationship in the record, ERB dismissed the complaint for lack of subject matter jurisdiction. ERB explained that, "because PECBA defines collective bargaining as the 'performance of the mutual obligation of a public employer and the representative of *its employees*' to meet and engage in good faith negotiations regarding mandatory subjects of bargaining, for the Port to be required to collectively bargain with the ILWU, the involved ILWU members must be Port employees." *ILWU I*, 279 Or App at 152-53 (emphasis in original; quoting ORS 243.650(4)).

We affirmed that dismissal in *ILWU I*, concluding that ERB's determination that petitioner failed to create an issue of fact or law that would entitle it to a hearing was supported by substantial evidence and substantial reason. *Id.* at 154-56.

### THE PARTIES' POSITIONS BEFORE ERB IN THE SECOND PETITION (*ILWU II*)

The present case follows a similar trajectory.[2] It stems from the Port's October 2014 issuance of a request

---

[2] *ILWU I* was brought by ILWU, Locals 8 and 40; the present case was brought solely by ILWU, Local 8. That difference aside, it involves the same

for proposal (RFP) soliciting bids from subcontractors— including subcontractors who are nonunion employers—to perform crane mechanical maintenance services. After the Port issued the RFP, petitioner informed the Port of its demand "to bargain decision and impact with regard to the decision to subcontract," invoking a 1984 collective bargaining agreement, the parties' last collective bargaining agreement.[3] The Port refused on the ground that it had no obligation to bargain over the RFP.

Following the Port's refusal, petitioner filed the complaint in this case before ERB, alleging that the Port was obligated under PECBA to bargain with petitioner regarding the RFP. More specifically, the complaint alleged that the Port "maintains ownership and maintenance responsibility" for the cranes at Terminals 2 and 6, and that "Local 8 members provide the mechanical maintenance services" for those cranes. It alleged that the RFP's "effect" "is potentially to eliminate the jobs now held by Local 8 members performing this work," because, "[i]n contrast to past subcontracting of this work when the Port had been careful to ensure that the subcontracted work would be performed only by subcontractors employing Local 8 members, the Port has indicated it will solicit any and all bids, including those from subcontractors who will not employ Local 8 members." Based on the RFP and the Port's refusal to bargain, the complaint alleged violations of two provisions of PECBA, ORS 243.672(1)(e) and ORS 243.672(1)(g).[4] Thus, like the complaint in *ILWU I,*

---

parties, attorneys, and ALJ and arises from the same procedural posture as *ILWU I.*

    [3] The 1984 agreement governed the employment relationship between the Port and petitioner's members through 1993, when the Port transferred management of its operations to a private contractor. Thereafter, petitioner's members were employed by and collectively bargained with the private contractor and its successor. Thus, although the 1984 agreement was not "officially rescinded" until 2012 or 2013, in practice it has not applied to the parties' relationship for over two decades. *See ILWU I,* 279 Or App at 148-49, 150-52.

    [4] Under ORS 243.672(1)(e) and (g), "[i]t is an unfair labor practice for a public employer or its designated representative" to "[r]efuse to bargain collectively in good faith with the exclusive representative" or to "[v]iolate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept arbitration awards as final and binding upon them."

the complaint in this case was premised entirely upon petitioner's theory that the Port's actions violated PECBA.

In its first response before ERB, the Port argued that, like the complaint in *ILWU I*, the complaint in this case should be dismissed because "the Port has not employed members of the ILWU for 20 years" and, consequently, "has no collective bargaining relationship" with petitioner. By extension, the Port argued, it "has no duty to bargain with ILWU [and] the Board is without jurisdiction to adjudicate the ILWU's unfair labor practice charges." In addition, the Port submitted the entire record pertaining to the complaint in *ILWU I* as part of its response.

Petitioner sought the ALJ's leave to respond. The ALJ granted that request in a December 4, 2014, letter. In it, she asked petitioner to "please focus on [the Port's] assertion that this [complaint] 'suffers from the same defects the Board found in the union's charges dismissed in [*ILWU I*].'" She specified that petitioner should particularly focus on the following excerpt from the order dismissing the complaint in *ILWU I*:

> "'Our investigation has determined that we have no jurisdiction over this matter. The Port, although a public employer, does not employ members of ILWU. Rather, the involved ILWU members are employed by International Container Terminal Services, Inc. (ITCSI), which is a private, not public, employer. Consequently, ILWU is unable to meet the statutory requirements of an ORS 243.672(1)(g) or (e) violation because it is unable to plead that the *public employer* (or designated representative) of the affected employees acted unlawfully.'"

(Emphasis in original.)

In response, petitioner pointed to several circumstances—namely, the 1984 agreement, the Port's status as a public entity, its ownership and control over the cranes, that it historically employed petitioner's members or worked with contractors who did, and the "impact" the RFP might have on petitioner's members—as establishing jurisdiction. Petitioner did not challenge the basic jurisdictional premise that ERB's jurisdiction over PECBA complaints is limited to disputes between a public employer and its employees.

## ERB'S ORDER OF DISMISSAL AND
## ORDER ON RECONSIDERATION

ERB dismissed the complaint and affirmed that decision on reconsideration. The Order of Dismissal appeared to turn largely on ERB's disposition of *ILWU I*, which ERB said established the absence of an employer-employee relationship between the Port and petitioner's members. Applying that determination to the legal principle that PECBA applies only where there is a public employer-employee relationship, ERB ultimately concluded that the absence of such a relationship left it without subject matter jurisdiction to adjudicate the complaint. ERB explained its reasoning as follows:

> "As set forth in our order in [ILWU I], the bargaining obligations of the public employer under the Public Employee Collective Bargaining Act (PECBA) are with respect to 'a public employer and the representative of its employees.' It is the 'law of the case' per our dismissal in [ILWU I] that the Port does not employ Local 8 members.[5] Notwithstanding that conclusion, which Local 8 does not contest in its submissions to this Board, Local 8 asserts that this complaint 'presents a different issue.' As we understand Local 8's argument, even though the Port has not employed Local 8 members for over 20 years, the Port has, until the recent RFP, required subcontractors to use Local 8 members to perform the contracted-out mechanical crane maintenance. Because the Port is allegedly no longer choosing to impose such a requirement on service providers who submit bids in response to the RFP, the Port is, according to Local 8, required to bargain both that decision and its impacts with Local 8.

> "Like its argument in [*ILWU I*], Local 8's argument here still bypasses the basic statutory requirement that the Port employ members of Local 8 in order for this Board to have jurisdiction over the alleged bargaining dispute. In other words, even assuming, as we must at this stage, that the

---

[5] Footnote 3 of the Order of Dismissal acknowledged that the law of the case doctrine was not typically applied outside of an appellate setting, but reasoned that it was nonetheless "apt" given the similarity between the first and second complaints, and given that "there is no assertion in the instant matter that the employer-employee relationship has changed between our dismissal in [*ILWU I*] and the filing of this complaint."

Port promised Local 8 that the Port would 'exercise its control' over subcontractors by requiring those subcontractors to use Local 8 members to perform mechanical crane maintenance, it does not follow that we have jurisdiction over that dispute. *In order for this Board to have jurisdiction over the alleged dispute, there must be an employer-employee relationship between the public employer (the Port) and the employees represented by the exclusive bargaining representative (Local 8). Because the law of the case establishes that there is no disputed issue of fact or law on that dispositive jurisdictional matter, we will dismiss the complaint.*"

(Quoting ORS 243.650(4); citations omitted; emphases added.)

Petitioner sought reconsideration, asserting that the facts establish that "the Port is an employer within the meaning of PECBA," and asked ERB to determine "whether the Port exercises that degree of direction and control over mechanical crane maintenance such that the Port is an employer under PECBA."

ERB adhered to and supplemented its prior order on reconsideration. *See* OAR 115-035-0025 (providing that ERB, "at its discretion, may grant reconsideration"). The reconsideration order reiterated that the dismissal was based on ERB's conclusion that "there was no disputed issue of fact or law on the dispositive question as to whether the Port currently employed members of Local 8," and that that conclusion was based on ERB's determination in *ILWU I* that the Port does not employ petitioner's members.

THE PARTIES' ARGUMENTS ON REVIEW

Petitioner now seeks judicial review, arguing that ERB erred in applying the law of the case doctrine to determine that no employer-employee relationship existed between the Port and petitioner's members. According to petitioner, ERB's use of that doctrine—"applicable only in the same case and to appellate decisions"—constituted reversible error. Petitioner does not challenge ERB's legal conclusion that its jurisdiction under PECBA is limited to circumstances involving a public employer and its employees or their representative.

## ANALYSIS

We review ERB's orders for substantial evidence and errors of law, and to determine whether its analysis comports with substantial reason. ORS 183.482(8); *Portland Fire Fighters' Assn. v. City of Portland*, 267 Or App 491, 498, 341 P3d 770 (2014).

For the reasons below, we agree with petitioner that ERB's application of the law of the case doctrine in this context was error. The law of the case doctrine "preclude[es] relitigation of an appellate court holding after remand and on subsequent appeal" and establishes that,

"'when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'"

*Kennedy v. Wheeler*, 356 Or 518, 524, 341 P3d 728 (2014) (quoting *State v. Pratt*, 316 Or 561, 569, 853 P2d 827 (1993)); *see also Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 54, 110 P3d 615, *rev den*, 339 Or 544 (2005) (explaining that the law of the case doctrine is invoked "to preclude parties from revisiting issues that already have been fully considered by an appellate court in the same proceeding"). Thus, that doctrine is inapposite in the context of the two separate administrative proceedings here because it gives preclusive effect only to the prior ruling or decision of an *appellate court* (as opposed to a trial court or administrative body) and does not bar such rulings from being overruled in separate cases.

The Port nonetheless contends that that error does not require reversal because ERB reached the determination that no employment relationship existed, apart from its reliance on the law of the case doctrine, based on a review of the record and arguments before it, and because its conclusion is supported by substantial evidence and substantial reason.

We disagree. The dismissal order expressly relies upon an erroneous application of the law of the case doctrine as the basis for its dispositive determination that the

Port does not employ petitioner's members, and it is unclear whether ERB separately and independently grounded that determination on the arguments and evidence presented during its investigation of the second complaint. That circumstance essentially leaves us without a key factual finding to review, as we ordinarily would, for substantial evidence. Beyond that, absent ERB's erroneous determination that, under the law of the case doctrine no employment relationship exists between the parties, its ultimate conclusion that there is no disputed issue of law or fact that would warrant a hearing does not comport with substantial reason because it fails to articulate facts that lead to the conclusion drawn. *See Salosha, Inc. v. Lane County*, 201 Or App 138, 143, 117 P3d 1047 (2005) (a substantial evidence challenge requires us to review the board's order for substantial reason to ensure that the order "articulates the reasoning that leads from the facts found to the conclusions drawn"); *cf. Poet v. Thompson*, 208 Or App 442, 452, 144 P3d 1067 (2006) (concluding that a trial court's erroneous reliance on the law of the case doctrine constituted reversible error).

In sum, ERB erred in applying the law of the case doctrine in determining that the Port does not employ petitioner's members, and there are no other independent findings to support ERB's conclusion that there is no disputed issue of fact or law that would warrant a hearing. On remand, ERB should reevaluate whether its investigation of the second complaint revealed a disputed issue of fact or law that would warrant a hearing.[6]

---

[6] In a footnote, the Port argues that ERB's conclusion that the decision in *ILWU I* is the "law of the case" for *ILWU II* is "perhaps better understood under the doctrine of issue preclusion." Although not argued as such, we take that to be an alternative argument for affirmance of ERB's order. The "'right for the wrong reason' principle permits a reviewing court—as a matter of discretion—to affirm the ruling of a lower court on an alternative basis when certain conditions are met." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). Assuming, without deciding, that that principle applies on judicial review of an ERB order, we do not exercise our discretion and further conclude that this case does not qualify for affirmance on a "right for the wrong reason" basis. While the Port argued below that ERB should reach the same result it did in *ILWU I* in reaching and deciding the merits in *ILWU II*, the Port did not raise issue preclusion below and the arguments and record may have developed differently had it done so. *Id.* at 660 (stating third condition as whether the record would have been materially the same one that would have developed had the prevailing party raised the alternative argument below). As just one example, ILWU

Reversed and remanded.

contends that it raised additional facts in *ILWU II* regarding its claimed public employment status that were not part of the record in *ILWU I*, which may have a bearing on whether issue preclusion could have applied here and the extent of that preclusion, if any. Accordingly, we do not address the Port's proffered alternative basis for affirmance and, therefore, we expressly do not decide whether issue preclusion or other preclusion doctrines might apply in this case. We decide only that the law of the case doctrine does not apply.