Submitted July 12, 2017, affirmed November 6, 2019

Phil DREYER,
*Plaintiff,*
*and*

Frank GEARHART
and Kafoury Bros., LLC,
an Oregon limited liability corporation,
*Plaintiffs-Appellants,*

*v.*

PORTLAND GENERAL ELECTRIC CO.,
*Defendant-Respondent.*
Marion County Circuit Court
03C10639; A161947 (Control)

Patricia MORGAN,
*Plaintiff-Appellant,*

*v.*

PORTLAND GENERAL ELECTRIC CO.,
*Defendant-Respondent.*

Marion County Circuit Court
03C10640; A161948

453 P3d 580

In these consolidated cases, the class action plaintiffs appeal a general judgment of dismissal entered after the trial court denied plaintiffs leave to amend their complaint and granted defendant Portland General Electric's (PGE) motion for summary judgment. *Held*: The trial court did not abuse its discretion in denying leave to amend the complaint. The trial court properly evaluated each of the nonexclusive factors articulated in *Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000), and did not abuse its discretion in rejecting plaintiffs' proposed amended complaint. The trial court also did not err in granting PGE's motion for summary judgment, properly rejecting plaintiffs' law-of-the-case argument and plaintiffs' contention that there were genuine issues of material fact in dispute.

Affirmed.

Tracy A. Prall, Judge.

Linda K. Williams, Daniel W. Meek, and Phil Goldsmith filed the briefs for appellants.

James N. Westwood, Stoel Rives LLP, Paul W. Conable, Alexander M. Tinker, and Tonkon Torp LLP filed the brief for respondent.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and James, Judge.

DEHOOG, P. J.

Affirmed.

**DEHOOG, P. J.**

In these consolidated cases, the class action plaintiffs (plaintiffs) appeal a general judgment of dismissal entered after the trial court denied plaintiffs leave to amend their complaint and granted defendant Portland General Electric's (PGE) motion for summary judgment. We review the denial of plaintiffs' motion for leave to amend for abuse of discretion. *Safeport, Inc. v. Equipment Roundup & Mfg.*, 184 Or App 690, 698, 60 P3d 1076 (2002), *rev den*, 335 Or 255 (2003). In reviewing the grant of summary judgment, we view the evidence in the record and all reasonable inferences that the evidence supports in the light most favorable to plaintiffs, the nonmoving parties, to determine whether the trial court properly concluded that there are no genuine issues of material fact and that PGE is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). Applying those standards, we conclude that the trial court did not err; we therefore affirm.

This case is the final installment in an extensive series of challenges arising out of the Public Utility Commission's (PUC) approval of rates for PGE in Order No. 95-322 that erroneously included, as a component of those rates, a return on PGE's capital investment in the unused Trojan nuclear generating facility, which had been prematurely retired from service. Plaintiffs challenged the order, and, in *Citizens' Utility Board v. PUC*, 154 Or App 702, 716-17, 962 P2d 744 (1998), *rev dismissed*, 335 Or 91 (2002), we remanded the order to the PUC for reconsideration.[1]

While PUC's reconsideration of Order No. 95-322 was pending, plaintiffs brought this action, alleging that the rates PGE had charged between April 1, 1995 and October 1, 2000, pursuant to that order were unlawful and that PGE's collection of payments at those rates had caused them recoverable damages. The complaint alleged that: (1) PGE had

_____

[1] We held that PGE was entitled to recover, as part of its rates, its undepreciated capital investment in Trojan, but could not include a return on that investment in its rates. Thus, we distinguished the lawful component of its rates—a return *of* PGE's investment in Trojan—from the unlawful component—a return *on* its investment. *Citizens' Utility Board*, 154 Or App at 716.

violated ORS 757.355 (1993)[2] by charging and receiving rates that included a return on PGE's investment in Trojan, rendering PGE liable for damages under ORS 756.185;[3] (2) PGE had violated ORS 757.225[4] by charging an amount for utility services not authorized by law; and (3) plaintiffs were entitled to damages, under the equitable theories of "money had and received" and unjust enrichment, for the component of PGE's charges that represented a return on its investment. Plaintiffs sought damages in excess of $190 million, which they alleged PGE had charged "illegally" between April 1, 1995 and October 1, 2000, due to its inclusion of a return on the Trojan investment in its rates.

In a ruling issued January 9, 2005, the trial court declined PGE's request to abate the action pending the PUC's reconsideration of its order. The court also rejected PGE's motion to dismiss and motion for summary judgment, instead granting summary judgment to plaintiffs on their claims for money had and received and violation of ORS 757.355 (1993).

PGE petitioned the Supreme Court for a writ of mandamus, seeking to compel the trial court to dismiss or abate plaintiffs' claims. In *Dreyer v. PGE*, 341 Or 262, 276, 142 P3d 1010 (2006), the Supreme Court declined to dismiss the claims, reasoning that, at a minimum, one claim remained legally tenable: the claim alleging a violation of ORS 757.355 (1993). As the court explained, it was possible that the PUC would determine that PGE customers had, in fact, overpaid for services, but that the PUC had no authority to order refunds of the overpayment; in that event, a civil action could be plaintiffs' only means of obtaining relief. The court concluded, however, that the matter should be abated

---

[2] ORS 757.355 (1993) provides, in part, that "[n]o public utility shall *** charge *** any customer rates which are derived from a rate base which includes within it any *** building *** not presently used for providing utility service to the customer."

[3] ORS 756.185 (formerly ORS 757.355) provides a right of action for damages against a public utility that engages in conduct prohibited by ORS chapters 756, 757, or 758.

[4] ORS 757.225 provides that "[n]o utility shall charge, demand, collect or receive a greater or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in printed rate schedules as may at the time be in force[.]"

pending the PUC's determination of those matters on recon-
sideration, because the PUC had "primary jurisdiction":

> "[T]he PUC proceeding that is underway thus has the
> potential for disposing of the central issue in these cases,
> *viz.*, the issue whether plaintiffs have been injured (and, if
> they have been, the extent of the injury). In that regard,
> we note that the PUC has been instructed either to revise
> and reduce rates to offset the previous 'improperly calcu-
> lated and unlawfully collected rates' or to order PGE to
> issue refunds. Depending on how the PUC responds to that
> remand, some or all plaintiffs' claimed injuries may cease
> to exist. Moreover, the PUC's specialized expertise in the
> field of ratemaking gives it primary, if not sole, jurisdic-
> tion over one of the remedies contemplated in the remand:
> revision of rates to provide for recovery of unlawfully col-
> lected amounts. Certainly, if the PUC decides to take that
> approach to the problem, its special expertise makes it a
> far superior venue for determining that remedy."

341 Or at 285. And, as the court explained, the PUC's deter-
minations could potentially affect the civil action:

> "If the PUC determines that it can provide a remedy to rate-
> payers, then the present action may become moot in whole
> or in part. If, on the other hand, the PUC determines that it
> cannot provide a remedy, and that decision becomes final,
> then the court system may have a role to play. Certainly,
> after the PUC has made its ruling, plaintiffs will retain the
> right to return to the circuit court for disposition of what-
> ever issues remain unresolved, including the question of a
> fee award."

*Id*. at 286. Accordingly, the court issued a peremptory writ
ordering the circuit court to abate the action, and plaintiffs'
claims were held in abeyance. *Id.*; *see also Gearhart v. PUC*,
356 Or 216, 226, 356 P3d 216 (2014) (describing history).

Following our remand of Order No. 95-322, the
PUC held further proceedings resulting in the issuance
of PUC Order No. 08-487. In Order No. 08-487, the PUC
determined what rates it *would* have approved had it cor-
rectly disallowed a return on PGE's investment in Trojan.
The PUC determined that the resulting rates for April 1,
1995 to October 1, 2000, would have been *higher* than the
rates that PGE had actually charged to customers for that

same period. In other words, the PUC determined that the charged rates for 1995 to 2000, although calculated with an erroneous component, were lower than the rates that the PUC would have calculated had it applied the law correctly; as a result, the PUC concluded, the rates charged during that timeframe were just and reasonable and did not result in any unrectified damages to PGE's ratepayers. *Gearhart*, 356 Or at 230; *Gearhart v. PUC*, 255 Or App 58, 94, 299 P3d 533 (2013) ("We hold that the PUC's conclusion—that the inclusion of the unlawful component did not cause the rates to be unjust or unreasonable and, therefore, has not resulted in any unrectified damages to ratepayers—was consonant with the remands and the PUC's responsibility[.]"); *id.* (noting that the determining factor was lawfulness of the end result of the ratemaking process, not the legality of each calculation or input).

Previously, PGE and plaintiffs had reached a settlement with respect to customers who had paid for utility services after October 1, 2000. However, the PUC's reevaluation of the pre-October 2000 rates led it to conclude that the rates charged thereafter were too high and had resulted in an overpayment for services by those customers, not all of which had been accounted for through the settlement. *Gearhart*, 356 Or at 229. After determining that it had the power to remedy that overpayment by ordering refunds, the PUC required PGE to issue refunds totaling $33.1 million plus interest to PGE's post-October 2000 customers.

The PUC did not, however, require PGE to issue refunds to plaintiffs for the period of 1995 to 2000, due to its conclusion in Order No. 08-487 that the rates charged during that period had been just and reasonable and that there had therefore been no overpayments. We and the Supreme Court subsequently upheld PUC Order No. 08-487. *Gearhart*, 356 Or at 253. With respect to the PUC's failure to issue refunds for the period of 1995 to 2000, the Supreme Court explained:

"To the extent that the [plaintiffs] argue that the PUC declined to award them a remedy by ordering a refund only for the post-2000 ratepayers, we note that the PUC did not order a refund to the [plaintiffs] who claimed to be injured

by the 1995-2000 rates because it determined that the [plaintiffs] were not injured by those rates."

356 Or at 247. The effect of the Supreme Court's opinion in *Gearhart* was to uphold the PUC's determination that PGE did not violate ORS 757.355 (1993) or ORS 757.225, and that plaintiffs did not overpay for utility services from 1995 to 2000 and therefore did not sustain any damages.

On May 6, 2015, PGE sought—without objection from plaintiffs—to have plaintiffs' claims taken out of abeyance, and the trial court granted that request. On the same date, PGE filed a motion for summary judgment, in which it contended that, in light of the Supreme Court's opinion in *Gearhart* upholding the PUC's determination that the rates for 1995 to 2000 were just and reasonable and that plaintiffs therefore had not been damaged, there were no material factual disputes remaining, and PGE was entitled to judgment as a matter of law. The parties argued that motion on July 27, 2015.

In October 2015, while the summary judgment motion was under advisement, plaintiffs filed a motion seeking leave to amend their complaint to add allegations that PUC Order No. 95-322 was void *ab initio*, that the previous rate order (PUC Order No. 87-1017) was the lawful order that remained in effect, and that plaintiffs were entitled to damages based on the difference between the charges imposed under PUC Order No. 95-322 and the charges that would have been imposed under PUC Order No. 87-1017.[5]

On February 22, 2016, the trial court issued an order denying plaintiffs' motion to amend the complaint, noting that, under ORCP 23 A, the complaint could be amended only by leave of the court. Quoting from *Staten v. Steel*, 222 Or App 17, 43, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009), the court listed the four, nonexclusive "*Ramsey* factors" that we have held to be considerations relevant to a trial court's exercise of discretion in deciding whether to grant leave to amend:

---

[5] Plaintiffs also sought to "make more explicit allegations of attorney fee entitlement" through their proposed amendments.

> "(1) The proposed amendment's nature and its relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendment; and (4) the colorable merits of the proposed amendment."

*Id*.[6] The court then addressed those considerations. The court first observed that the proposed amendments did not merely "cure deficiencies or omissions" in the complaint; rather, they injected entirely new theories of liability and damages. The court further explained that the proposed amendments would prejudice PGE, as there had been no indication, during the previous nine years of abatement pending agency and appellate review, that plaintiffs intended to assert additional claims, and allowing the amendments would "effectively reframe the case, making nine years of appellate rulings meaningless and causing the parties to start from scratch." In the trial court's view, the timing of plaintiff's motion, made after 12 years of litigation, four months after the abatement was lifted, and after the motion for summary judgment had been submitted but not yet ruled upon, appeared to be tactical rather than an oversight, and weighed against allowing the request. Finally, the court concluded, as it would more thoroughly discuss in its letter opinion relating to the motion for summary judgment, the proposed amendments had no colorable merit.

　　Five of plaintiffs' six assignments of error on appeal relate to the trial court's denial of leave to amend the complaint. ORCP 23 A provides that, once a responsive pleading has been served, a party may amend its own pleading only by leave of the court or by written consent of the adverse party, but "leave [to amend] shall be freely given when justice so requires." We review the denial of leave to amend for an abuse of discretion, *Safeport, Inc.*, 184 Or App at 698, and will uphold a trial court's ruling denying leave unless the court has exercised its discretion in a manner that is unjustified by, and clearly against, evidence and reason,

---

[6] We refer to those considerations as the "*Ramsey* factors" because they first were collectively articulated in *Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000). Although *Ramsey* itself was decided under ORS 138.610, relating to petitions for post-conviction relief, we have since applied the factors identified in that case to motions for leave to amend under the rules of civil procedure. *See, e.g.*, *Staten*, 222 Or App at 43.

*Alexander v. State of Oregon*, 283 Or App 582, 590, 390 P3d 1109 (2017).

Plaintiffs advance various arguments as to how, in their view, the trial court abused its discretion. Plaintiffs do not, however, contend that the trial court should not have considered the nonexclusive *Ramsey* factors when exercising its discretion to allow an amendment.[7] Nor, with the limited exceptions addressed below, do plaintiffs suggest that the court relied on an erroneous interpretation of the law in exercising its discretion. *See State v. Romero*, 236 Or App 640, 643-44, 237 P3d 894 (2010) ("Where, however, a trial court's purported exercise of discretion flows from a mistaken legal premise, its decision does not fall within the range of legally correct choices and does not produce a permissible, legally correct outcome."). With that understanding, and for the reasons that follow, we conclude that the trial court properly evaluated the *Ramsey* factors and did not abuse its discretion in denying plaintiffs' motion for leave to amend the complaint.

Like the trial court, we specifically note that plaintiffs' "void *ab initio*" argument, under which the factfinder would be required to compare the rates charged to the rates authorized under PUC Order No. 87-1017—as opposed to the rates determined to be just and reasonable in PUC Order No. 08-487—was a wholly new theory that neither plaintiffs' earlier claims nor the years of agency and judicial review had foreshadowed. And, whether or not, as plaintiffs suggest, the trial court's belief that they could have raised their new arguments earlier in the case was legally incorrect, that belief appears unlikely to have informed the trial court's ultimate rationale—that allowing the proposed amendments at that late time would cause considerable prejudice to PGE.[8] As the court noted, plaintiffs' "proposed

---

[7] We note that although plaintiffs do not expressly dispute the applicability of any of the *Ramsey* factors, they do argue that it was an abuse of discretion for the trial court to "prejudge" the potential merits of their new claims. However, the "colorable merits" of a party's proposed amendments to a complaint are a specific consideration under *Ramsey. See Staten*, 222 Or App at 43. Accordingly, we reject that argument without further discussion.

[8] Plaintiffs argue that, because this case was held in abeyance, they could not have raised that argument earlier. However, even if that is true, nothing that

amendments would effectively reframe the case, making the nine years of appellate rulings meaningless and causing the parties to start from scratch." Moreover, even if much of *that* delay should, out of fairness, be attributed to PGE, who had asked that the matter be abated, the same is not true as to the post-reactivation delay, which appears to have been entirely attributable to plaintiffs. Given that plaintiffs fully litigated defendant's summary judgment motion and waited over two months after the court had taken that motion under advisement before filing their motion for leave to amend, the trial court reasonably could have concluded that plaintiffs' delay was wholly tactical and that the interests of justice weighed against plaintiffs' request.

Similarly, the trial court did not, under the first *Ramsey* factor, err in characterizing plaintiffs' proposed attorney fee claim as "new," as plaintiffs also contend. Plaintiffs' original complaint requested relief in the form of $190,000,000, with prejudgment interest, and included a general request for costs and reasonable attorney fees. But plaintiffs did not identify a specific source for attorney fees. Additionally, in this litigation, plaintiffs did not prevail on any claim that would support an award of attorney fees. The attorney fees that plaintiffs now seek though their proposed amendments relate to benefits obtained through litigation of PGE's obligations to its post-2000 ratepayers, which did not inure to the benefit of any of the plaintiffs in this case. *Gearhart*, 356 Or at 247. As a result, the trial court reasonably could view plaintiffs' attorney fee claims as both new and unrelated to the allegations of the existing complaint.

Plaintiffs make various other arguments as to how the trial court abused its discretion in denying them leave to amend the complaint. Ultimately, however, whether we consider them individually or collectively, none of plaintiffs' additional arguments persuade us that the court abused its discretion in ruling as it did, and, to the extent that we have not expressly identified every argument that plaintiffs make on that point, we reject the balance of those arguments without further discussion.

we are aware of would have precluded plaintiffs from seeking to raise their "void *ab initio*" argument in the parallel *Gearhart* litigation, to which they also were parties and which, like this case, involved the legality of PUC Order No. 95-322.

Finally, plaintiffs' sixth assignment of error challenges the trial court's ruling granting PGE's motion for summary judgment. Plaintiffs contend that the circuit court's ruling on January 9, 2005, granting plaintiffs' motion for summary judgment on the claims for money had and received and violation of ORS 757.355, became "law of the case," and that the trial court therefore could not revisit the ruling. Plaintiffs are mistaken. The January 9, 2005, order was superseded, first by the Supreme Court's opinion in *Dreyer*, 341 Or at 282, abating the action pending the outcome of *Gearhart*, then by the Supreme Court's opinion in *Gearhart* upholding the PUC's order determining that plaintiffs have not been damaged, 356 Or at 247, and, finally, by the circuit court's ruling, within its discretion, reconsidering the January 9, 2005, order and instead granting PGE's motion for summary judgment. The trial court's decision to reconsider its prior ruling in light of subsequent case law was within the court's discretion and was not precluded by "law of the case." *State v. Demings*, 116 Or App 394, 396, 841 P2d 660 (1992), *rev den*, 315 Or 371 (1993) (the law of the case does not prohibit a trial judge from reconsidering a ruling by the judge or by a different judge in the same court). *See also Kennedy v. Wheeler*, 356 Or 518, 531, 341 P3d 728 (2014) ("The term 'law of the case' is best reserved for use in the context in which a party seeks to relitigate an appellate decision. Use of the term to address other issues may confuse rather than clarify."); *ILWU, Local 8 v. Port of Portland*, 279 Or App 157, 164, 379 P3d 1172, *rev den*, 360 Or 422 (2016) (explaining that law of the case doctrine "gives preclusive effect only to the prior ruling or decision of an appellate court (as opposed to a trial court or administrative body)"); *cf. Miller v. Racing Commission*, 298 Or App 70, 85, 445 P3d 371 (2019) (using "law of the case" to describe prudential decision of trial court to give preclusive effect to prior ruling within the same litigation).

As an alternative to their law-of-the-case argument, plaintiffs argue the merits of PGE's motion for summary judgment, contending that the trial court erred in granting that motion because questions of fact remained as to what part of the rates that PGE had charged between 1995 and 2000 had been attributable to the disallowed return

on its investment in Trojan. Further, plaintiffs contend, *Dreyer* specifically contemplated a role for a jury following the issuance of PUC Order No. 08-487, and a factual question remains as to damages plaintiffs sustained during the period when PUC Order No. 95-322 was in effect. Finally, plaintiffs contend, the court erred in granting summary judgment, because civil liability is cumulative of any regulatory remedy that the PUC could have provided.

Plaintiffs' contentions rely in part on the law-of-the-case argument that we have just rejected and the belated *void-ab-initio* theory that plaintiffs were not permitted to assert. Additionally, plaintiffs appear to be of the view that the determination that the rates authorized by PUC Order No. 95-322 included an unlawful component under ORS 757.355 (which plaintiffs characterize as a determination of "liability") in and of itself entitles plaintiffs to damages. Plaintiffs support that assertion with their understanding that in *Dreyer*, 341 Or at 282, the Supreme Court held that, despite a determination that the rates actually charged from 1995 through October 1, 2000, were just and reasonable, plaintiffs could still be entitled to damages for that portion of the charges attributable to the unlawful return on PGE's investment in Trojan.

We do not agree with plaintiffs' reading of *Dreyer*. In the cited paragraph,[9] the court merely rejected the PGE's argument that any determination of damages by a jury would invade the exclusive ratemaking authority of the PUC. The court did not imply that civil damages would be available for the unlawful component of rates even if the rates charged between 1995 and 2000 were just and reasonable. In fact, the court stated that, depending on how the

---

[9] "Although a jury theoretically could go about deciding the damage question in the manner suggested, *i.e.*, by determining what a 'fair and reasonable' rate would have been if the objectionable return on Trojan had been excluded and then comparing that rate to the one actually charged during the relevant period, it also could simply attempt to determine what part of the rates that the PUC had approved as 'fair and reasonable' in fact represented a return on PGE's investment in Trojan and, therefore, were unlawful under ORS 757.355 (1993), as interpreted in [*Citizens' Utility Board*]. The first approach arguably would invade the PUC's exclusive ratemaking authority, but we are not persuaded that the latter approach would involve a similar trespass." 341 Or at 282.

PUC responded on remand in *Citizen's Utility Board*, "some or all [of] plaintiffs' claimed injuries may cease to exist." *Dreyer*, 341 Or at 285.

As noted, the PUC determined that the rates actually charged between April 1, 1995 and October 1, 2000, were just and reasonable and that, without the disputed return on the Trojan investment, the authorized rates would have been greater. *Gearhart*, 356 Or at 228-29. And, in our *Gearhart* decision, we stated:

> "We hold that the PUC's conclusion—that the inclusion of the unlawful component did not cause the rates to be unjust or unreasonable and, therefore, has not resulted in any unrectified damages to ratepayers—was consonant with the remands[.]"

255 Or App at 94. Finally, the Supreme Court stated:

> "To the extent that the [plaintiffs] argue that the PUC declined to award them a remedy by ordering a refund only for the post-2000 ratepayers * * * we note that the PUC did not order a refund to the [plaintiffs] who claimed to be injured by the 1995-2000 rates because it determined that the [plaintiffs] were not injured by those rates."

*Gearhart*, 356 Or at 247. Under ORS 756.185(1), a utility that violates ORS chapters 756 to 758 "is liable to the person injured thereby in the amount of damages sustained in consequence of such violation." The gist of the PUC's order, and this court's and the Supreme Court's affirmance of that order, is that plaintiffs have not been injured. Therefore, as the trial court reasoned in its letter opinion, plaintiffs have no damages to recover. Thus, we conclude that the trial court did not err in granting PGE's motion for summary judgment.

Having concluded that the trial court did not err in the rulings to which plaintiffs have assigned error, we affirm the trial court's judgment.

Affirmed.